UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN D.,

                      Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

**DECISION AND ORDER**

1:23-cv-00020-EAW

## INTRODUCTION

Represented by counsel, Plaintiff Dawn D. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] (Dkt. 11; Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is denied and the Commissioner's motion (Dkt. 14) is granted.

_____

[1] Plaintiff filed her motion as "Plaintiff's Brief in Support of a Social Security Appeal" rather than as a motion, but the Court will treat it as Plaintiff's motion for judgment on the pleadings. (Dkt. 11).

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on May 28, 2020.[2] (Dkt. 6 at 259-85). In her applications, Plaintiff alleged disability beginning July 8, 2018. (*Id*. at 259, 280). Plaintiff later amended her alleged onset date to August 28, 2019. (*Id*. at 316). Plaintiff's applications were initially denied on November 12, 2020, and then denied upon reconsideration on April 14, 2021. (*Id*. at 80-97, 100-17). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Heidi Southern on November 1, 2021. (*Id*. at 46-74). On December 22, 2021, the ALJ issued an unfavorable decision denying Plaintiff's claims. (*Id*. at 19-45). Plaintiff then requested review by the Appeals Council, which the Council denied on November 10, 2022, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 6-12).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[2]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[3]  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act,

---

[3]    Because DIB and SSI regulations mirror each other, the Court will just reference the DIB regulations in its analysis.

in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

- 4 -

## DISCUSSION

### I.    The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through December 31, 2023.  (Dkt. 6 at 25).  At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since August 28, 2019, the amended alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: hypothyroidism/Graves' disease, fibromyalgia, left shoulder degenerative joint disease, bilateral carpal tunnel syndrome, anxiety, bipolar disorder, adjustment disorder, and somatic symptom disorder.  (*Id*.).  She also determined that Plaintiff's hyperlipidemia and vitamin D deficiency were nonsevere impairments, and that Plaintiff did not present any evidence to demonstrate that she had also suffered from rheumatoid arthritis.  (*Id*. at 26). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 30-32). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations.  (*Id*. at 32).   Specifically, the ALJ determined that Plaintiff could frequently balance; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or moving mechanical parts;

frequently use her hands for handling and fingering; occasionally reach overhead with the left upper extremity; and use the bilateral lower extremities for operating foot controls. (*Id.*). Lastly, the ALJ determined that although Plaintiff cannot perform at a production rate pace, she could perform goal-oriented work, such as an office cleaner, and have occasional changes in an otherwise routine work environment. (*Id.*).

At step four, the ALJ found that Plaintiff had been unable to perform any past relevant work. (*Id.* at 35). Considering Plaintiff's age, education, and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy, such as store cashier, sales attendance, and merchandise marker that Plaintiff could perform. (*Id.* at 37). She further considered the VE's testimony, who opined that even if Plaintiff was limited to standing/walking for four hours in an eight-hour workday and to occasionally balancing, there would still be jobs in the national economy, such as merchandise clerk, routing clerk, and dispatcher that Plaintiff could perform. (*Id.*). As a result, the ALJ concluded that Plaintiff was not disabled from the amended alleged onset date of August 28, 2019, through the date of her decision. (*Id.* at 38).

## II.   **The ALJ Determination is Supported by Substantial Evidence.**

In her single argument, Plaintiff takes issue with the ALJ's consideration of the opinion of her treating physician Kevin Macy, D.O. ("Dr. Macy"), and argues that the ALJ's failure to properly evaluate its persuasiveness has led to the RFC determination that

was not supported by substantial evidence.[4]  (Dkt. 11 at 7-11).  For the reasons discussed below, the Court finds Plaintiff's argument without merit.

Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'"  *Id.* § 404.1520c(c).  The source of the opinion is not the most important factor in evaluating its persuasive value.  *Id.* § 404.1520c(b)(2).  Rather, the most important factors in evaluating persuasiveness are supportability and consistency.  *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted).  Specifically,

---

[4]      Because Plaintiff does not argue that the ALJ erred in formulating her mental RFC, the Court will focus solely on Plaintiff's physical functioning.  (Dkt. 11 at 7-11).

the ALJ must explain how she considered the supportability and consistency factors, and may, but is not required to, consider the three remaining factors. 20 C.F.R. § 404.1520c(b)(2). Although the ALJ's failure to adequately explain how she considered the supportability and consistency of a medical opinion in the record constitutes procedural error, it does not always lead to a reversal of the ALJ's findings if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, the ALJ evaluated several medical opinions contained in the record to arrive at Plaintiff's RFC. (Dkt. 6 at 32-35). Plaintiff takes issue with the ALJ's evaluation of the opinion of her treating physician Dr. Macy issued in June 2020, which the ALJ found to be minimally persuasive. (Dkt. 6 at 33; Dkt. 11 at 8-11).

As Plaintiff's primary physician, Dr. Macy treated her every one to three months since April 2019 for cervical disc disorder, rotator cuff tendonitis, carpal tunnel syndrome, fibromyalgia, Graves' disease, hypothyroidism, as well as mental disorders. (Dkt. 6 at 606, 856). In June 2020, Dr. Macy issued an opinion regarding Plaintiff's physical functioning, in which he opined that due to her diffuse pain, fatigue, numbness, and neuropathy, Plaintiff was limited to lifting and carrying less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely, and could sit for four hours, stand for two hours,

- 8 -

and walk for one hour while alternating her position throughout the day. (*Id*. at 607). Dr. Macy also opined that due to Plaintiff's carpal tunnel syndrome, numbness in her hands, lumbago, and leg pain, Plaintiff could use her hands and feet only occasionally and could only rarely climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, crawl, and rotate her head and neck. (*Id*. at 608-09). Lastly, Dr. Macy opined that due to her symptoms Plaintiff would be "off task" more than twenty five percent of her workday and would miss more than four days per month. (*Id*. at 606).

The ALJ found Dr. Macy's opinion to be minimally persuasive because the objective evidence in the record "belie[d] Dr. Macy's findings that the claimant [wa]s essentially precluded from any and all work activity . . . ." (*Id*. at 32-33). Plaintiff argues that this conclusion was improper because the ALJ did not articulate the supportability and consistency factors in her analysis of Dr. Macy's opinion. (Dkt. 11 at 10). The Court disagrees.

Generally, the "supportability" factor "asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations,'" while "[t]he 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1) and § 404.1520c(c)(2)). The regulations place a burden on an

ALJ to discuss both factors throughout the analysis and explain how she considered the supportability and consistency factors, and possibly considered the three remaining factors identified by the regulations.  20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ did not analyze the two factors separately from one another and did not explicitly discuss what records Dr. Macy relied on to support his opinion regarding Plaintiff's physical limitations.  *See Cuevas*, 2021 WL 363682, at *14 (The ALJ failed to consider the supportability factor because "[n]owhere in the ALJ's decision does she explain, as the new regulations require, what the respective CEs' used to support their opinions and reach their ultimate conclusions.").  However, while addressing the inconsistency of Dr. Macy's opinion with the objective medical evidence, the ALJ not only discussed the records of Plaintiff's other physicians, but also made references to Dr. Macy's treatment notes to support her conclusion that none of the evidence provided support for Dr. Macy's ultimate determination regarding Plaintiff's physical limitations. (Dkt. 63 at 32-33).  Therefore, although the review of the records issued by the other medical sources related to the consistency, not the supportability factor, *see Cuevas*, 2021 WL 363682, at *14, this Court cannot conclude that the ALJ failed to consider the supportability factor entirely because she has referenced Dr. Macy's own treatment notes to determine that they, as well as the records of Plaintiff's other sources, did not support Dr. Macy's opinion.  Moreover, it has been determined that as long as "'a searching review of the record' assures [this court] 'that the substance of the [regulation] was not traversed,'"

- 10 -

any error in not considering the supportability and consistency factors is harmless. *Loucks*, 2022 WL 2189293, at *2 (citations omitted); *see also Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102-FPG, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) ("[I]nsofar as the [c]ourt can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, the [c]ourt finds that the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.'") (quotations omitted). Here, the Court finds that "the substance of the [regulation] was not traversed" because it can glean how the ALJ weighed the supportability factors for Dr. Macy's opinion; therefore, any error in not properly considering the supportability of Dr. Macy's opinion is harmless. *Id*.

As for the consistency factor, the Court finds that the ALJ properly engaged in the analysis of Dr. Macy's opinion when she compared his treatment notes with the records of Plaintiff's other treatment providers, as well as the other objective medical evidence, which revealed Plaintiff's mild bilateral carpal tunnel syndrome and mild ulnar motor neuropathy at the right elbow with no evidence of radiculopathy, generalized neuropathy, or muscle disease, normal gait and muscle strength of her bilateral upper extremities, normal range of motion of her joints, as well as her normal musculoskeletal and neurological functioning. (Dkt. 6 at 32-33 citing 547-05, 611-819, 840, 861-011).

Importantly, aside from Dr. Macy's June 2020 opinion, the record contains another opinion that he issued a year later in June 2021, which was not addressed by either the ALJ in her decision, or the parties in their briefing. (*Id*. at 856-59). The opinion was also not

considered by the State Agency physicians as it was issued after they had reviewed the record. The June 2021 opinion is substantially similar to Dr. Macy's June 2020 opinion insofar as it lists nearly identical postural limitations and limitations associated with Plaintiff's use of her hands and feet; but provides for more restricted environmental limitations and the limitations associated with Plaintiff's ability to climb ladders, stoop, crouch, crawl, and rotate her head and neck. (*Id.* at 857-58).

Generally, when a medical source provides one or more medical opinion, an ALJ is required to consider those opinions together when engaging in the persuasiveness analysis. *See* 20 C.F.R. § 404.1520c(a). Here, it is clear that the ALJ did not consider both Dr. Macy's opinions and, instead, relied only on Dr. Macy's June 2020 opinion in her decision. (Dkt. 6 at 32). While this was an error, the Court finds that it too was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (an error is harmless "where application of the correct legal principles to the record could lead [only to the same] conclusion") (alteration in original and citation omitted). Had the ALJ considered Dr. Macy's June 2021 opinion, she would have reached the same conclusion regarding Plaintiff's limitations as she did when she analyzed his June 2020 opinion—that his findings were not supported by the record. Because the application of the correct legal principle would lead to the same conclusion, and because the findings outlined in the June 2021 opinion were substantially similar to the findings Dr. Macy reached in his June 2020 opinion, the Court finds that the ALJ's failure to consider Dr. Macy's June 2021 opinion was harmless. *Id.* at 409-10

(harmless error not to consider a physician's report when it was largely identical to the report that was considered by the ALJ).

The record demonstrates that Dr. Macy treated Plaintiff for a variety of physical and mental impairments since April 2019 when Plaintiff routinely complained about fatigue, radiating pain in her back, shoulders, neck, wrists, elbows, and ankles, and diffuse muscle and joint pain. While Dr. Macy's earlier physical examinations to some extent supported Plaintiff's complaints of decreased range of motion in her shoulders, tenderness in her back, as well as wrist and joint pain, most of his treatment records reveal Plaintiff's generally unremarkable musculoskeletal and neurological examinations, with Plaintiff demonstrating normal range of motion in her back, neck, and wrists, and no muscle or joint pain. (Dkt. 6 at 639, 641, 682, 691-92, 698, 711, 720, 728, 736, 751-52, 765, 787, 799, 809-11, 841). In January 2020, Plaintiff had surgery on her shoulders, which relieved her shoulder pain until approximately August 2020, when she complained about the return of her shoulder pain, back, joint, and muscle pain, and noted that her shoulder range of motion was decreasing. (*Id*. at 639, 641, 682, 785, 787). However, upon examination, Plaintiff did not demonstrate any musculoskeletal or neurological problems, had normal range of motion in her neck, and did not have any joint or muscle pain. (*Id*. at 788). Although Plaintiff reported feeling dizziness and having back, joint, and muscle pain throughout 2020 and 2021, Dr. Macy found that she was not in distress and demonstrated no neurological, musculoskeletal, or other issues during that period. (*Id*. at 841, 948, 972,

1019, 1036, 1038).  Notably, Dr. Macy no longer indicated Plaintiff's fibromyalgia, chronic shoulder pain, or carpal tunnel syndrome among her primary health concerns, and Plaintiff's anxiety and hypothyroidism gradually became her primary health issues for which she sought treatment.  (*Id.* at 810, 946-48, 952, 956, 970, 973, 1035-36, 1043).

Aside from the inconsistencies with his own treatment records, Dr. Macy's findings were also not supported by medical records of Plaintiff's other providers.  Specifically, Mujeeb Rahninwala, M.D., who treated Plaintiff's fibromyalgia and observed her having multiple tender points associated with the condition, noted unremarkable neurological and musculoskeletal examinations of Plaintiff's cervical spine, shoulders, wrists, hips, knees, and ankles, as well as normal ranges of motion in her cervical spine, shoulders, hips, and other joints.  (*Id.* at 549, 553, 556).  Treatment notes of M. Husain Jawadi, M.D., who mainly treated Plaintiff's thyroid dysfunction, revealed that although Plaintiff had tender back and disc disease, she was not in distress, and that all her musculoskeletal and neurological examinations were within normal limits.  (*Id.* at 568, 571, 574, 576, 578, 593, 596, 598, 600, 603).

Additionally, Dr. Macy's limitations were not supported by the result of the nerve conduction study performed in January 2020, which revealed only mildly distorted perception of touch in Plaintiff's hands and feet while the remaining findings related to her cervical and lumbar spine, upper and lower extremities, as well as hips and knees, were unremarkable and within normal limits.  (*Id.* at 517-18).

Plaintiff argues that the ALJ failed to build an accurate and logical bridge between the evidence in the record regarding her limitations and the RFC, yet she pointed to no evidence that would result in greater limitations than those identified by the ALJ. While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted); *see also Bennett v. Comm'r of Soc. Sec.*, No. 22-281, 2023 WL 355156, at *3 (2d Cir. Jan. 23, 2023) ("Although there is some evidence in the record that could support [plaintiff's] position, whether there is substantial evidence supporting [plaintiff's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.") (emphasis in the original, citation omitted).

Here, the record supports the ALJ's RFC determination and does not demonstrate that any limitations beyond those identified by the ALJ are warranted. Indeed, the ALJ properly considered the record and Plaintiff's testimony to determine that Plaintiff was limited to light work because there was no evidence in the record to suggest greater limitations in her ability to perform the basic walking, standing, sitting, and lifting. (Dkt. 6 at 33, 35). As explained above, the ALJ also properly found the limitations identified by Dr. Macy unsupported by the record. Lastly, she properly considered Plaintiff's subjective complaints and the results of the nerve conduction study to adjust the findings of the State

Agency physicians related to Plaintiff's mainly occasional postural limitations, her ability to frequently handle and finger, and occasionally operate foot controls, and limited Plaintiff to occasional reaching with her left upper extremity based on the degenerative disease of her left shoulder.  (*Id*. at 33).

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, she has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed his duty to prove a more restrictive RFC).  For the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.  Accordingly, there is no basis for remand or reversal.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court


Dated:        May 13, 2024
              Rochester, New York


- 16 -